### INHABITANTS OF VASSALBOROUGH

*versus*

### SOMERSET AND KENNEBEC RAIL ROAD COMPANY.

Under an article in a warrant for a town meeting "to see if the town will relinquish their right to any part of the eight rod allowance on lot No. 63 to E. S. as a compensation for land *had of said E. S.* on said lot No. 63 for a road for a landing, or act thereon as they may think proper;" it was voted to relinquish to E. S. two rods of the eight rod allowance joining to the north line of No. 63 from the county road to the east end of the lot. In the absence of evidence showing the mode in which the town "had the land" of said E. S., the language of the warrant and votes cannot be treated as sufficient proof of title.

The right to a town or county road is but an easement for public use in which the town has legally no title or property.

REPORTED by MAY, J., presiding at *Nisi Prius.*

This is an action of trespass as alleged in the writ.

In the original location of the lots in Vassalboro', an eight rod range-way was reserved between lots sixty-three and sixty-four, in range one, from the river back one mile. From the earliest settlement, so far as the recollection of the inhabitants in the neighborhood of this range-way goes, the part of the same, leading from the county road to the river, was used as a road for the inhabitants of the town to haul wood, bark, screwed hay, and all kinds of lumber to the landing at the Kennebec river, to be floated thence to market. At the annual meeting of Vassalboro', held in April, 1802, the town voted to accept a road laid out by the selectmen, as follows:

" Laid out for the use of the town the following road and landing, viz: Beginning near the bank of the river on the south line of an eight rod road between lots No. 63 and 64, thence running south 43 deg., east 21 rods, thence south 63 deg., east 13 rods, thence south 79 deg., east 11 rods, thence north 88 deg., east 17 rods, where it intersects the south line of said eight rod road, thence E. S. E. to the county road, thence northerly on said road eight rods, thence W. N. W. to the river."

At a special meeting held on the 6th day of April, 1802, under an article " to see if the town will relinquish their right to any part of the eight rod allowance on lot No. 63 in the first range of lots, to Edward Sturgis, as a compensation for land had of said Sturgis on said lot No. 63, for a road and landing, or act thereon as they shall think proper ;" the town " voted to relinquish to Edward Sturgis two rods of the eight rod allowance, joining the north line of No. 63, from the county road to the east end of said lot." The piece of land supposed to be obtained by the foregoing vote from Edward Sturgis, was an acre lying on the bank of the river adjoining on the south line of said eight rod allowance. The road aforesaid continued to be used for the purposes aforesaid, and said acre as a landing place from 1802 to 1843. At that time, in consequence of the adjoining owners having encroached upon said road and made it too narrow for convenience, the town, at the March meeting in 1843, under an article " to see if the town will accept the location of a road leading from a point in the county road near the dwelling house of James Thatcher, westerly to the Kennebec river, agreeable to minutes to be exhibited at said meeting, and act thereon as they may think proper," accepted the following new location of said road as a town road:

' " Beginning at a point in the centre of the river road near the dwelling house of James Thatcher, and at the distance of one and one-half rods from the north line of an eight rod allowance for a road between lots No. 63 and 64, range one, thence north 69 deg. west on said allowance for road the dis-

tance of 38 rods, thence north 80 deg., west 62 rods, thence north 42 deg., west 37 rods, through the town landing on the aforesaid allowance to the Kennebec river, which is the termination of said road as now laid out by the selectmen of said town, said road to be three rods in width measured to the right and left of the aforesaid courses."

This road has been assigned to highway surveyors from year to year, to be kept in repair, and has been repaired from time to time as it required. There was a basin and eddy in the river adjoining this landing, which rendered the landing and road valuable to the citizens of the town.

The defendants have located their road through this land-ing place and across the road, as appears by the location thereof, which is referred to and made a part of the case; and in constructing the same they have dumped into the ba-sin and eddy of the river so as to narrow and injure the same for the purposes for which it has been used, and erected an embankment along a considerable part of the line of their road through said landing and across said town road about eight or nine feet above the surface of the ground, so as to render the river inaccessible for the purposes aforesaid. Every year this road, landing and eddy have been used for hauling wood, bark and other lumber, and screwed hay, and depositing the same on the landing for market; for taking out cedar and other kinds of lumber floated down the river from above and stopped in the eddy, and for crossing on the ice in the winter with teams and sleighs to the Hutchinson landing in Sidney, directly opposite. The mode of con-structing the defendants' railroad has cut off these uses, and rendered the road, landing and eddy substantially useless to the plaintiffs.

The defendants plead the general issue and file a brief statement. They also make their charter a part of the case without a copy, and refer to their records showing the loca-tion and construction of their road, the taking of land, and the doings of their directors.

*J. Baker*, counsel for the plaintiffs.

This is an action of trespass, and in order to maintain it the plaintiffs must show :

1. Title to the premises. The town way has existed, as the case finds, from the earliest recollection of the " oldest inhabitant," and in 1802 it was laid out and accepted as a town way in due form of law. In 1843 it was again laid out and accepted by the town, and during all this time it has been used by the citizens for various purposes, assigned to highway surveyors, and repaired. The title to the " town landing," containing one acre south of the town road, is derived by exchange with Edward Sturgis, by vote of the town in 1802, and it has been claimed, occupied and used exclusively by them ever since. This is sufficient evidence of title. R. S., chap. 81, secs. 10, 11.

2. That the defendants have obstructed these premises. The case finds that they have dumped into the basin and eddy and made it narrower ; that they have run their road across the landing and road, and made an embankment eight or nine feet above the original surface, so as to render the river inaccessible for the purposes for which these premises have been used heretofore. R. S., chap. 164, sec. 1.

But it is said that the defendants by their location have shown a right to take these premises under the general law and their charter, and do the acts complained of.

This we deny. 1. The legislature having granted the right and pointed out the mode of locating town ways, they are of equal authority with a railroad — co-equal in right, the same as one railroad against another, and must depend on priority of time for their superiority of right. In this case, the town road is prior, and therefore superior to, the railroad, and it would be in the nature of a violation of contract for the legislature to grant a power to destroy the town road, just as much as to grant power to one railroad to destroy a prior railroad. 23 Pick., 236.

But in fact the legislature has not, in this case, undertaken

to grant any such power by general law or by charter, but prohibited it. R. S., chap. 81, secs. 8, 9, 10, 11, 12, 13, 14, 15.

The defendants have raised this town way without leaving it in good repair, or giving the notice required in sec. 8.

3. No compensation or tender of compensation has been made for the road, landing, or privilges, and without this, within a reasonable time, the defendants are trespassers. Cushman v. Smith, 34 Maine R., 247; statute of 1853, chap. 41, secs. 4, 5. That the statute of 1853 is applicable to this company, see Norris v. Androscoggin Railroad Company, 39 Maine R., 273; charter of same company, private laws of 1848, chap. 184, sec. 17. Defendant's charter, 1848, chap. 186, sec. 14.

*Bradbury, Morrill, & Meserve,* counsel for plaintiff.

TENNEY, C. J. This being an action of trespass upon land, in order to be successful therein, the plaintiffs must show either title or possession.

No paper evidence of title was introduced, and none of the ordinary character is pretended to have existed. But it appears that at a special meeting of the inhabitants of Vassalboro', holden on April 6, 1802, under an article in a warrant, to see if the town will relinquish their right to any part of the eight rod allowance, on lot No. 63, in the first range of lots, to Edward Sturgis, as a compensation for land had of said Sturgis on said lot No. 63, for a road or a landing, or act thereon, as they may think proper, it was voted to relinquish to Edward Sturgis two rods of the eight rod allowance, joining the north line of No. 63, from the county road to the east end of the lot. The case states that the piece of land supposed to have been obtained by the foregoing vote, from Edward Sturgis, was one acre, lying on the bank of the river, adjoining the south line of said eight rod allowance; and that acre has been used as a landing place from 1802 to 1843.

No evidence was introduced to show the mode in which

the town "had the land of said Sturgis;" and such language used in the warrant for a town meeting of the plaintiffs, and the vote passed thereon, cannot be treated as sufficient proof of title in them.

It is very clear upon the authority of Bethun v. Turner, 1 Greenl., 111; Littlefield v. Maxfield, 31 Maine R., 134; and State v. Wilson, Maine R. (not yet published,) and the cases therein cited, that no title has been acquired by the plaintiffs under any possession, which the case finds, to have been in them.

Another question involved is, whether this action can be maintained for the obstruction by the defendants of the passage way from the county road to the river, upon the assumption that it was legally constituted a road in 1802, and afterwards in 1843.

The title to the land covered by the road is in the original owner, his heirs or assigns, subject to the public easement, which, according to the facts relied upon by the plaintiffs, has 'been impaired, and perhaps for the present destroyed, by the defendants. In the case of Calais v. Dyer, 7 Greenl., 155, Mellen, C. J., in delivering the opinion of the court, says, in relation to a town road, "The town certainly owns no more than an easement; and as a town road is as much a public road as a county road is, for all the purposes of traveling and use, the consequence is, that the easement is a public one; and it cannot be considered in a legal point of view as the town's easement or property." In harmony with the principle just stated, is the case of Andover v. Sutton and als., 12 Met., 182, and also that of Freedom v. Weed, 40 Maine R., 383.

The foundation of the suit having failed, it is unnecessary to consider other questions presented in the argument.

*Plaintiffs nonsuit.*